No. 97-643

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 6

BILLINGS FIREFIGHTERS LOCAL 521,

INTERNATIONAL ASSOCIATION OF

FIREFIGHTERS and RICH ELSENPETER,

Plaintiffs and Respondents,

v.

CITY OF BILLINGS and LORREN BALLARD,

FIRE CHIEF and MARK WATSON,

CITY ADMINISTRATOR,

Defendants and Appellants.

No

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Maurice R. Colberg, Jr., Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Bonnie J. Sutherland, Assistant City Attorney,

Billings, Montana

For Respondents:

John W. Ross; Brown Law Firm, Billings, Montana

Submitted on Briefs: January 7, 1999

Decided: January 21, 1999

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

**¶1. The City of Billings, Lorren Ballard, and Mark Watson (collectively, the Defendants) appeal from the writ of mandamus and judgment entered by the Thirteenth Judicial District Court, Yellowstone County, following its order granting summary judgment to the Billings Firefighters Local 521, International Association of Firefighters (Local 521) and firefighter Rich Elsenpeter (Elsenpeter). We affirm.**

**¶2. The ultimate issue on appeal is whether the District Court erred in granting summary judgment to Local 521 and Elsenpeter. In resolving that issue, we address:**

**¶3. 1. Whether the District Court erred in concluding that the City of Billings and its officials are statutorily required to present the charges against a suspended firefighter to the city council for a hearing following the suspension.**

**¶4. 2. Whether the District Court erred in concluding that the collective bargaining agreement provisions are consistent with the requirements of § 7-33-4124, MCA.**

*BACKGROUND*

**¶5. On March 27, 1995, Billings Fire Chief Lorren Ballard (Chief Ballard) issued a "Notice of Intention to Take Disciplinary Action, Specification of Charges, and**

Notice of Hearing Date" to Elsenpeter. The next day, Chief Ballard suspended Elsenpeter with pay. On March 31, 1995, disciplinary action was discussed during a meeting in Chief Ballard's office. Chief Ballard suspended Elsenpeter without pay on April 3, 1995, and issued a "Recommended Order and Command of Disciplinary Action."

¶6. In May of 1995, Local 521 filed a grievance with the Billings Fire Department on Elsenpeter's behalf, alleging that mandatory statutory procedures following Elsenpeter's suspension were not followed. Because the interpretation of state law was at issue, the parties agreed that the grievance was not appropriate for arbitration under their collective bargaining agreement.

¶7. Local 521 and Elsenpeter (collectively, the Firefighters) subsequently filed a complaint in the District Court alleging that the post-suspension requirements contained in § 7-33-4124, MCA, which require presentation of the charges against a suspended firefighter to the city council for a hearing, were not met. They requested a writ of mandamus requiring the Defendants to comply with §§ 7-33-4101 *et seq.,* MCA, particularly the post-suspension procedures in § 7-33-4124, MCA; a declaration that the provisions of §§ 7-33-4101 *et seq.*, MCA, are mandatory; and an order requiring Elsenpeter's reinstatement with pay for the period of his suspension in April of 1995. The Defendants answered the complaint and admitted that the procedures alleged by the Firefighters were used in suspending Elsenpeter. They denied, however, that they had a duty under § 7-33-4124, MCA, to present the charges against Elsenpeter to the city council for a hearing on the bases that the Montana Constitution and § 7-3-701(2), MCA, permit a local government which has adopted the charter form of government to supersede certain statutory provisions and the City of Billings (the City) had superseded § 7-33-4124, MCA, via its charter.

¶8. The Firefighters moved for summary judgment and the parties later stipulated to the admission of certain exhibits. The District Court ordered admission of the exhibits, heard arguments on the summary judgment motion and subsequently issued its memorandum and order granting summary judgment to the Firefighters. Thereafter, it issued a writ of mandamus ordering that all charges against suspended Billings firefighters occurring since October 27, 1995, be presented to the Billings City Council for a hearing, a declaratory judgment that the Defendants are required to comply with § 7-33-4124, MCA, and judgment awarding Elsenpeter back pay for the shifts he missed during his suspension in April of 1995. The Defendants appeal.

## STANDARD OF REVIEW

**¶9. We review a district court's ruling on summary judgment *de novo*, applying the same Rule 56(c), M.R.Civ.P., criteria used by the district court. Montana Metal Buildings, Inc. v. Shapiro (1997), 283 Mont. 471, 474, 942 P.2d 694, 696 (citation omitted). The moving party must establish the absence of genuine issues of material fact and entitlement to judgment as a matter of law. *Montana Metal Buildings*, 283 Mont. at 474, 942 P.2d at 696 (citation omitted). Here, the District Court determined there were no significant factual issues and granted summary judgment to the Firefighters based on its interpretation of the law applicable to firefighter suspensions. We review a district court's conclusions of law to determine whether the interpretation of the law is correct. Ash Grove Cement Co. v. Jefferson County (1997), 283 Mont. 486, 491-92, 943 P.2d 85, 89 (citation omitted).**

## DISCUSSION

**¶10.** **1. Did the District Court err in concluding that § 7-33-4124, MCA, requires the City and its officials to present the charges against a suspended firefighter to the city council for a hearing?**

**¶11. In granting summary judgment to the Firefighters, the District Court concluded that suspending a firefighter is a function of the city council, which is required to maintain a municipal fire department pursuant to §§ 7-33-4101 *et seq.*, MCA, and, therefore, § 7-33-4124, MCA, requires all cities, regardless of their form of government, to present the charges against a suspended firefighter to the city council for a hearing. The Defendants contend that the District Court's conclusion is erroneous because suspending firefighters is part of the organization and structure of the City's government under its charter, rather than a city council function, and, pursuant to § 7-3-701(2), MCA, the City's charter supersedes § 7-33-4124, MCA.**

**¶12. Article XI, Section 5 of the Montana Constitution expressly provides for the charter form of self-government, requires the legislature to establish procedures regarding the charter form, and states that "[c]harter provisions establishing executive, legislative, and administrative structure and organization are superior to statutory provisions." Consistent with this constitutional mandate, the legislature enacted §§ 7-3-102 and 7-3-702, MCA, which provide for the charter form of government possessing self-government powers. The legislature also provided for the superiority of charter provisions regarding structure and organization over statutory**

provisions. *See* § 7-3-701(2), MCA. The legislature recognized, however, that the superiority of charter provisions is not without limits and provided, in § 7-3-708(1), MCA, that "[c]harter provisions may not conflict with the provisions of part 1, chapter 1, which establish statutory limitations on the powers of self-government units." Section 7-1-114(1)(f), MCA, contains one of the statutory limitations and provides that local governments with self-government powers are subject to "any law directing or requiring a local government or any officer or employee of a local government to carry out any function or provide any service[.]" In this regard, and subject to exceptions not applicable here, all towns and cities in Montana are required to organize and manage a fire department in accordance with §§ 7-33-4101 *et seq.*, MCA. Section 7-33-4101, MCA.

¶13. We previously addressed whether charter provisions relating to a fire department were superior to statutory mandates in a similar dispute between the City and Local 521 in Billings Firefighters Loc. 521 v. City of Billings (1985), 214 Mont. 481, 694 P.2d 1335. In that case, the city--acting under its charter--exempted its fire service from most of the statutory provisions pertaining to municipal fire departments. *Billings Firefighters*, 214 Mont. at 483, 694 P.2d at 1336. Specifically, the city council adopted an ordinance purporting to supersede § 7-33-4101, MCA, which requires all cities to organize, manage and control their municipal fire departments in accordance with the provisions of Title 7, Chapter 33, Part 41, MCA. *Billings Firefighters*, 214 Mont. at 490, 694 P.2d at 1339-40. Because the ordinance contained no requirement that the city maintain a municipal fire department, we held that the city violated § 7-1-114(1)(f), MCA, by attempting to supersede all of § 7-33-4101, MCA. *Billings Firefighters*, 214 Mont. at 491, 694 P.2d at 1340. We did not address possible conflicts between other sections of Title 7, Chapter 33, Part 41, MCA, and § 7-1-114(f), MCA. *Billings Firefighters*, 214 Mont. at 491, 694 P.2d at 1340.

¶14. We returned to the subject of municipal fire departments in Phillips v. City of Livingston (1994), 268 Mont. 156, 885 P.2d 528. The city of Livingston, which had adopted the commission-manager form of government but referred to its commission as the city council, adopted a policy which stated that only the city manager could discharge city employees and required the city manager to hold a termination hearing before any discharge. *Phillips*, 268 Mont. at 158, 885 P.2d at 530. The city manager held a hearing on the charges against firefighter Phillips and, thereafter, terminated him. *Phillips*, 268 Mont. at 158, 885 P.2d at 529-30. Phillips petitioned the

district court for a writ of mandamus to compel his reinstatement because the hearing was not before the city council or commission as required by § 7-33-4124, MCA. *Phillips*, 268 Mont. at 158, 885 P.2d at 530. The court denied the petition. *Phillips*, 268 Mont. at 158, 885 P.2d at 530.

¶15. We observed on appeal that Livingston's policy conflicted with § 7-33-4124, MCA, by not requiring a termination or suspension hearing for firefighters by the city council and by allowing the city manager to discharge Phillips. *Phillips*, 268 Mont. at 159-60, 885 P.2d at 530-31. Noting that Livingston was attempting to supersede the statutory duty of the city council to hold a hearing before deciding to terminate a suspended firefighter, we held that the effort violated § 7-1-114(1)(f), MCA, which subjects local governments with self-governing powers to laws directing or requiring a local government to carry out a function. *Phillips*, 268 Mont. at 159-60, 885 P.2d at 530-31. Moreover, because Livingston's policy did not require the council to perform the statutory function of holding a hearing, that policy--as applied to municipal firefighters--was void. *Phillips*, 268 Mont. at 160, 885 P.2d at 531.

¶16. Like Livingston in *Phillips*, the City in the present case has attempted to supersede the § 7-33-4124, MCA, requirement that charges against a suspended firefighter be presented to the city council for a hearing. Because the hearing requirement is a statutorily required function of the city council pursuant to *Phillips*, the City's charter cannot supersede the requirements of § 7-33-4124, MCA. *See Phillips*, 268 Mont. at 159-60, 885 P.2d at 530-31.

¶17. The Defendants contend, however, that *Phillips* is distinguishable because, unlike the City here, Livingston does not have self-government powers; thus, according to the Defendants, *Phillips* applies only to local governments with general government powers. While it is true that we did not specifically address the nature of Livingston's local government in *Phillips*, except as indicated above, our decision therein was based on § 7-1-114, MCA, which is expressly applicable to local governments with self-government powers. Since it is undisputed in this case that the City has self-government powers, both § 7-1-114, MCA, and *Phillips* apply here.

¶18. The Defendants also argue that procedures relating to the suspension of all City employees are part of the structure and organization of the City under its charter and, pursuant to § 7-3-701(2), MCA, the City is free to supersede the hearing requirement contained in § 7-33-4124, MCA. In this regard, they assert that the

District Court erred in applying a dictionary, rather than a statutory, definition of the term "structure" as that term appears in Article XI, Section 5 of the Montana Constitution and § 7-3-701(2), MCA, both of which recognize the superiority of charter provisions over statutory provisions "establishing executive, legislative, and administrative structure and organization[.]" According to the Defendants, the District Court should have applied the definition of "structure" contained in § 7-1-4121(24), MCA, because the statutory definition is narrower than the dictionary definition and, therefore, a more appropriate definition for the term "structure" as used in § 7-3-701(2), MCA.

¶19. "Whenever the meaning of a word or phrase is defined in any part of [the MCA], such definition is applicable to the same word or phrase wherever it occurs, except where a contrary intention plainly appears." Section 1-2-107, MCA. Section 7-1-4121, MCA, specifically limits application of the definitions contained therein to §§ 7-1-4121 through 7-1-4149, MCA. The legislature having clearly expressed its intention to limit application of the § 7-1-4121, MCA, definitions, the definition of "structure" set forth in that statute cannot properly be applied to § 7-3-701(2), MCA. *See* Richter v. Rose, 1998 MT 165, ¶¶ 18-19, 962 P.2d 583, ¶¶ 18-19, 55 St.Rep. 663, ¶¶ 18-19.

¶20. Having disposed of the Defendants' definitional argument, we turn to § 7-3-701 (2), MCA, pursuant to which charter provisions that establish "executive, legislative, and administrative structure and organization are superior to statutory provisions." When interpreting a statute, we first look to the plain meaning of the language used therein. Section 1-2-106, MCA; State v. Nye (1997), 283 Mont. 505, 510, 943 P.2d 96, 99 (citations omitted).

¶21. "Structure" is defined as the "interrelation or arrangement of parts in a complex entity: *political structure; plot structure.*" *American Heritage Dictionary* (3d ed. 1992) 1782. The City's charter provides that the city council and the mayor constitute the legislative branch. It prohibits the city administrator from being the mayor or a member of the city council; in other words, the city administrator cannot be part of the legislative branch of the City's government. Indeed, the city administrator's duties are addressed in Article VI of the charter, which pertains to the executive branch. This broad outline reflects that the City established its political structure in its charter and, pursuant to § 7-3-701(2), MCA, those charter provisions would supersede statutory provisions regarding legislative and executive structure.

¶22. The question remains, however, whether holding a post-suspension hearing for a firefighter is a function of the city council and, therefore, falls within the parameters of § 7-1-114(1)(f), MCA, which mandates that local governments with self-government powers are subject to statutory provisions requiring the local government, its officers or employees to "carry out any function or provide any service." While we have determined that holding a hearing on firefighter suspensions is a function of the city council (*see Phillips*, 268 Mont. at 160, 885 P.2d at 531), we have not previously focused on the term "function" as used in § 7-1-114(1)(f), MCA.

¶23. "Function" is defined as an "[a]ssigned duty or activity. A specific occupation or role. . . ." *American Heritage Dictionary* (3d ed. 1992) 734. Applying that definition here, it is clear that § 7-33-4124(1), MCA, expressly assigns the duty of holding a hearing following a firefighter's suspension to the city council. Therefore, we conclude that holding such a hearing is a "function" of the city council as that term is used in § 7-1-114(1)(f), MCA.

¶24. The Defendants contend that requiring compliance with § 7-33-4124, MCA, by local governments which have adopted the charter form of government produces an absurd result because § 7-3-704(1), MCA, authorizes a city charter to provide for either an elected legislative body, such as a city council, or a legislative body "comprised of all qualified electors." According to the Defendants, a city which has adopted the charter form of government and chosen not to have an elected legislative body would be forced to present all firefighter suspensions to the entire qualified electorate or forego the ability to suspend firefighters. Our function is to interpret the law and apply it to the facts before us, however, and the facts of this case are that the City has an elected city council. The result reached here is not absurd and we decline to address the Defendants' hypothetical scenario.

¶25. We hold that the District Court correctly concluded that § 7-1-114(1)(f), MCA, prohibits the City from superseding the city council hearing requirement contained in § 7-33-4124, MCA, via its charter, and that the City and its officials are statutorily required to present the charges against a suspended firefighter to the city council following the suspension.

¶26. 2. Did the District Court err in concluding that the collective bargaining agreement provisions are consistent with the requirements of § 7-33-4124, MCA?

¶27. After rejecting the Defendants' argument that the City superseded § 7-33-4124, MCA, via its charter, the District Court considered the Defendants' alternative argument that the statute was effectively waived by the parties' collective bargaining agreement (hereinafter, the CBA). The Defendants contended that Articles III and VIII of the CBA were inconsistent with a city council hearing pursuant to § 7-33-4124, MCA, and, as a result, constituted a waiver of that statutorily mandated hearing. In granting summary judgment to the Firefighters, the District Court specifically determined that Article VIII was not inconsistent with § 7-33-4124, MCA. It then generally concluded that the CBA could be interpreted consistently with § 7-33-4124, MCA, but did not specifically address Article III.

¶28. Before addressing the Defendants' assertions of error regarding the District Court's determinations that the CBA and the statute are not inconsistent, we observe that the Firefighters raise a threshold issue regarding whether the provisions of the CBA apply to Elsenpeter's suspension. They posit that, because the effective date of the CBA on which the Defendants rely was July 1, 1995, and Elsenpeter's suspension occurred in April of 1995, the CBA's provisions cannot be considered in this case. We disagree.

¶29. The first mention of the CBA in this case was contained in the Firefighters' complaint. Indeed, specific provisions of the CBA which the Firefighters now assert are not applicable were set forth in their complaint in detail. The Defendants' answer reiterated portions of the CBA.

¶30. Moreover, in their brief in support of their motion for summary judgment, the Firefighters referred to--and attached--the 1995 CBA. They argued that the CBA did not prohibit the Defendants from submitting charges against a suspended firefighter to the city council and having a hearing, all as contemplated by § 7-33-4124, MCA. The Defendants responded that the CBA procedures were the Firefighters' exclusive remedy. Only in their summary judgment reply brief did the Firefighters first advance the question of whether the CBA provisions applied. In that regard, the District Court expressly determined that "[t]he parties have furnished the collective bargaining agreement applicable in this case between the City of Billings and the Billings Firefighters."

¶31. In order to preserve an issue not raised by an appellant, a respondent must file a notice of cross appeal. Gabriel v. Wood (1993), 261 Mont. 170, 178, 862 P.2d 42, 47

(citation omitted). Here, the Defendants have not challenged the District Court's determination that the applicable CBA was before it and the Firefighters did not cross appeal. As a result, we will not address the Firefighters' threshold issue regarding the applicability of the CBA.

¶32. We turn, then, to the matters properly before us regarding whether certain portions of the CBA are consistent with § 7-33-4124, MCA. We must give effect to both the statute and the CBA if it is possible to do so. *See Phillips*, 268 Mont. at 160-61, 885 P.2d at 531.

¶33. Article VIIIG(2)(c) of the CBA provides that a hearing must be held on charges brought against a firefighter no sooner than three days after the firefighter is notified of the charges but "[p]rior to the imposition of suspension without pay. . . ." Section 7-33-4124, MCA, on the other hand, provides in pertinent part:

(1) In all cases of suspension the person suspended must be furnished with a copy of the charge against him, in writing, setting forth reasons for the suspension. Such charges must be presented to the next meeting of the council or commission and a hearing had thereon, when the suspended member of the fire department may appear in person or by counsel and make his defense to said charges.

(2) Should the charges not be presented to the next meeting of the council or commission after the suspension or should the charges be found not proven by the council or commission, the suspended person shall be reinstated and be entitled to his usual compensation for the time so suspended.

The District Court determined that, because Article VIIIG(2)(c) does not specify where the referenced hearing is to be held, it could refer to the city council hearing and thereby be read consistently with the hearing requirement contained in § 7-33-4124, MCA. The Defendants contend that the District Court erred because the hearing required by Article VIIIG(2)(c) must occur prior to a suspension without pay, while the § 7-33-4124, MCA, hearing occurs after such a suspension.

¶34. It is clear from a plain reading of the two different hearing requirements that the District Court erred in determining that the Article VIII hearing could be a reference to the city council hearing. Article VIIIG(2)(c) expressly requires a pre-suspension hearing and § 7-33-4124, MCA, requires a post-suspension hearing.

Nonetheless, the District Court's conclusion that the two requirements are not inconsistent is correct.

¶35. Under the CBA, a firefighter being considered for serious disciplinary action such as suspension without pay must receive notice of the charges and a hearing prior to imposition of the discipline. After a firefighter has been suspended, § 7-33-4124, MCA, requires a hearing by the city council. These two hearings, which occur at different stages of the disciplinary process, inarguably provide significant protection to a firefighter facing serious disciplinary action. They also are somewhat duplicative. Duplication does not equate to inconsistency, however. We conclude, therefore, that the CBA's pre-suspension hearing requirement is not inconsistent with the § 7-33-4124, MCA, post-suspension hearing requirement.

¶36. Although the District Court's rationale in determining that the two hearing requirements are not inconsistent was incorrect, the court reached the correct result. We affirm district court decisions which are correct regardless of the court's reasoning in reaching the decision. Clark v. Eagle Systems, Inc. (1996), 279 Mont. 279, 286, 927 P.2d 995, 999 (citation omitted). Thus, we hold that the District Court did not err in determining that Article VIIIG(2)(c) is not inconsistent with § 7-33-4124, MCA.

¶37. The Defendants also contend that the grievance provisions contained in Article IIID of the CBA are inconsistent with § 7-33-4124, MCA, and, as a result, the District Court's general conclusion that the CBA can be interpreted consistently with § 7-33-4124, MCA, is erroneous. We disagree.

¶38. The applicable grievance and arbitration procedures are set forth in Article III of the CBA. Article IIIA defines a grievance, in part, as a dispute between an employee or Local 521 and the City over matters covered by the CBA. Article IIID provides for a 3-step grievance procedure. In Step 1, an employee notifies the Fire Chief and Local 521 of a grievance in writing within 10 business days of the occurrence of the grievance. Local 521 investigates the grievance and may, within 20 business days, present the grievance to the Fire Chief for resolution. The Fire Chief attempts to resolve the grievance and reports the adjustment in writing to Local 521 within 5 days of receipt of the grievance. If the grievance remains unresolved, Local 521 may proceed to Step 2 by presenting the written grievance, together with its reasons for not accepting the Fire Chief's attempted resolution, to the City

Administrator. The City Administrator attempts to resolve the grievance and must respond in writing within 20 days. If the grievance still remains unresolved, Local 521 may proceed to Step 3, the arbitration procedure before a Board of Arbitration, which results in final and binding arbitration.

¶39. These CBA provisions are readily and easily integrated, and not inconsistent, with the requirements of § 7-33-4124, MCA. Section 7-33-4124(1), MCA, requires that, when a firefighter has been suspended, the city council must hold a hearing on the charges against the firefighter. If the charges are not timely presented to the city council or if the charges are found not proven, the suspended person must be reinstated and compensated for the time suspended. Section 7-33-4124(2), MCA. Clearly, under the latter circumstances, the firefighter employee likely would not have a grievance--that is, a "dispute"--to present pursuant to Article III of the CBA and no inconsistency between the statute and the CBA would arise.

¶40. In the event the city council finds the charges against the firefighter to be proven, the city council imposes the penalty it deems warranted, either continuing the suspension for a limited time or removing the firefighter from his or her position. Section 7-33-4124(3), MCA. In that event, a firefighter might well feel aggrieved by the city council's decision and, at that point in time, a grievance--that is, a "dispute"--between the firefighter and the City would arise. Thus, in terms of the language used in Article IIID of the CBA, a grievance would "occur" when the city council decided that the charges had been proven and imposed the penalty deemed appropriate. The employee then would be required to initiate the grievance procedure set forth in Article IIID within 10 business days and, in the event the grievance continued through Step 3, it would culminate in final and binding arbitration.

¶41. As we observed above in discussing the pre-suspension hearing required by the CBA and the post-suspension hearing required by § 7-33-4124, MCA, meshing the requirements of the CBA and the statute may result in some duplication. Here, for example, the Fire Chief might suspend a firefighter pursuant to the CBA and § 7-33-4123(2), MCA, and, in the event the city council upheld that decision after its hearing on the charges, the Fire Chief might again review the matter during Step 1 of the CBA's grievance procedure. The Defendants contend that this scenario results in a "convoluted mire of craziness and potential inconsistencies." While it is true that the Fire Chief would play a role at two different stages of the proceedings, that circumstance already exists pursuant to the CBA and § 7-33-4123, MCA, which

authorizes a fire chief to suspend a firefighter. In other words, the Fire Chief's potential dual role exists without regard to the city council hearing by virtue of the Fire Chief's authority to first suspend a firefighter and then attempt to resolve any resulting grievance under Step 1 of the CBA's grievance procedure. Thus, this dual role is not impacted by the city council hearing and cannot create an inconsistency with that hearing. We conclude that the requirements of § 7-33-4124, MCA, and the grievance and arbitration provisions set forth in Article IIID of the CBA are not inconsistent.

¶42. Finally, the Defendants rely on Article IIIF of the CBA, which provides that "[t]he use of the [grievance and binding arbitration] procedure is exclusive and shall constitute a waiver of recourse through any other procedure, except for recognized Civil procedures." They contend that, because Article IIIF provides for final and binding arbitration as the exclusive process for resolving disputes between firefighters and the City, it is inconsistent with the statutory requirement for a city council hearing. Again, we disagree.

¶43. We concluded above that the § 7-33-4124, MCA, hearing can be integrated with the grievance and arbitration procedures of the CBA and, as a result, that no inconsistency exists between the two. Our interpretation does not provide--or leave room--for a remedy other than final and binding arbitration for a grievance under the CBA. Nor does it provide for a final decision by some authority other than the Board of Arbitration required by Step 3 of the CBA's grievance procedure. Thus, the integrity of the final and binding arbitration for which Local 521 and the City contracted is fully protected and arbitration remains the exclusive remedy for disputes arising under the CBA.

¶44. Furthermore, the Defendants' largely undeveloped argument that integrating the city council hearing is inconsistent with the Article IIIF language providing that use of the grievance procedure constitutes a waiver of "recourse" through any other procedure is without merit for similar reasons. Firefighters are still required to utilize the contractual grievance procedures culminating in binding arbitration for disputes with the City involving matters covered by the CBA. No "recourse" through any other procedure--which can only mean some alternative procedure which would provide the ultimate remedy or decision--is substituted for the final and binding arbitration required by the CBA and, as a result, the "waiver" language contained in Article IIIF does not apply here. We conclude, therefore, that the integration of the

city council hearing mandated by statute into the contractual grievance procedures is not inconsistent with--or violative of--Article IIIF of the CBA.

¶45. We hold that the District Court correctly concluded that the provisions of the CBA are consistent with the requirements of § 7-33-4124, MCA.

¶46. Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART