No. 03-453

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 376

AMERICAN CANCER SOCIETY, AMERICAN LUNG
ASSOCIATION OF THE NORTHERN ROCKIES, AMERICAN
HEART ASSOCIATION, MONTANA MEDICAL ASSOCIATION,
PROTECTMONTANAKIDS.ORG., MONTANA SENIOR CITIZENS
ASSOCIATION, HELENA HEALTH CARE ASSOCIATES,
CITIZENS FOR A SMOKE FREE BOZEMAN, CITIZENS IN
SUPPORT OF HELENA'S SECOND-HAND SMOKE ORDINANCE,
UNITED TOBACCO FREE COALITION, CITIZENS FOR A
HEALTHY HELENA, JERI LOU DOMME, MARK SANZ,
M.D., BARBARA SUMMERS, TERRY CUREY, ALEXANDRA
PHILLIPS, DAVID B. KING, M.D., EDWARD G. ALLEN, M.D.,
CRYSTAL BRIDGES, ERNESTO RANDOLFI, RON BONE,
PATRICK COBB, M.D., and DONNA WHITMAN,

        Petitioners,

   v.

STATE OF MONTANA,

        Respondent.

ORIGINAL PROCEEDING

COUNSEL OF RECORD:

        For Petitioners:

                James Reynolds (argued) and David Wilson, Reynolds, Motl
                and Sherwood, Helena, Montana

        For Respondent:

                Honorable Mike McGrath, Attorney General; Sara Bond (argued),
                Assistant Attorney General, Helena, Montana

        For Amici Curiae:

                Laurance Waldoch and Thomas Pursell, Lindquist & Vennum, P.L.L.P.,
                St. Paul, Minnesota (American Medical Association et al.)

Paul J. Luwe, City Attorney, Bozeman, Montana (Montana League of Cities & Towns)

Mark Staples, Staples Law Firm, Helena, Montana (Montana Tavern Association)

Chris J. Gallus, Attorney at Law, Helena, Montana (Representative Devlin and Senator Tropila)

Arthur V. Wittich, Wittich Law Firm, Bozeman, Montana (Montana Restaurant Association)

Milton Datsopoulos, Datsopoulos, MacDonald, & Lind, Missoula, Montana  (Local 427, International Union, AFL-CIO)

Argued:  April 29, 2004

Submitted:  October 19, 2004

Decided:  December 28, 2004

Filed:

Clerk

2

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Petitioners requested this Court to accept original jurisdiction over their petition for declaratory judgment and declare House Bill 758 (HB 758), enacted by the 2003 Montana Legislature unconstitutional. Act approved Apr. 23, 2003, ch. 471, 2003 Mont. Laws 1797 (codified at § 7-1-120, MCA). By order dated October 22, 2003, we accepted original jurisdiction of the following four issues:

¶2 1. Whether HB 758 enacted in violation of Article V, Section 11(3), of the Constitution of Montana;

¶3 2. Whether HB 758 unconstitutionally deprives local governments and the people of the right of self-government in violation of Article XI, Section 6, of the Constitution of Montana;

¶4 3. Whether HB 758 unconstitutionally infringes on either (or both) the right of popular sovereignty (Article II, Section 1, of the Constitution of Montana) or the right of self-government (Article II, Section 2, of the Constitution of Montana); and

¶5 4. Whether Petitioners are entitled to their reasonable attorney fees under the Private Attorney General doctrine.

¶6 Following briefing by the parties and various *amici curiae*, as well as oral argument, we determine that § 7-1-120, MCA, does not constitute a prohibition of self-governing powers under Article XI, Section 6, of the Montana Constitution. Accordingly, we need not address the other constitutional challenges.

3

¶7     The parties agree that, in the recent past, four charter government cities with self-governing powers (Helena, Missoula, Bozeman, and Great Falls) have adopted local ordinances limiting–or prohibiting altogether–the smoking of tobacco products in buildings open to the public. Only one, Helena, has adopted an ordinance that applies, without limitation, to premises with state licenses for the operation of video gambling machines (VGMs). In response to these ordinances, the Legislature enacted HB 758 that imposes a surcharge fee on VGMs and exempts establishments that have VGMs on the premises from local government smoking ordinances that are more stringent than the Montana Clean Indoor Air Act of 1979 (MCIAA), §§ 50-40-101 to 109, MCA. Petitioners brought this action to request that we declare HB 758 unconstitutional under various provisions of the Montana Constitution.

¶8     We address the constitutional issues before us pursuant to well-established principles. We presume a legislative enactment to be constitutional. *Powder River County v. State*, 2002 MT 259, ¶ 73, 312 Mont. 198, ¶ 73, 60 P.3d 357, ¶ 73. "The question of constitutionality is not whether it is possible to condemn, but whether it is possible to uphold the legislative action . . . ." *Powder River County*, ¶ 73. Thus, a legislative enactment will not be declared invalid unless it conflicts with the constitution beyond a reasonable doubt. *Powder River County*, ¶ 73. "The party challenging a statute bears the burden of proving that it is unconstitutional beyond a reasonable doubt and, if any doubt exists, it must be resolved in favor of the statute." *Powder River County*, ¶ 74.

4

## DISCUSSION

¶9      Under the 1972 Montana Constitution, then-existing local governing units retained the same powers they had under the 1889 Montana Constitution (i.e. those powers specifically provided by law), although the 1972 Montana Constitution, Article XI, Section 4(2), mandated that such powers be liberally construed.  The 1972 Montana Constitution then created a new category of local government by allowing local governing units to adopt self-governing charters.  In contrast to local governing units without self-governing powers, which are creatures of the state that have only those powers conferred by law, a local governing unit with a self-governing charter can exercise any power not prohibited by the constitution, law, or charter.  Montana Constitution, Article XI, Section 6, provides:

> **Section 6.  Self-government powers.**  A local government unit adopting a self-government charter may exercise any power not *prohibited* by this constitution, law, or charter. This grant of self-government powers may be extended to other local government units through optional forms of government provided for in section 3.

(Emphasis added.)  Significantly, "the 'shared powers' concept does not leave the local unit free from state control; it does, however, change the basic assumption concerning the power of local government.  At present, that [sic] assumption is that local government *lacks* power unless it has been specifically granted.   Under the shared powers concept, the assumption is that local government *possesses* the power, unless it has been specifically denied." Montana Constitutional Convention, Comments on Committee Proposal, Feb. 19, 1972, p. 797.

¶10     To maintain the presumption that the locality retains all powers the Legislature does not prohibit, the Legislature must expressly–and not impliedly–delineate those prohibitions.

5

As we previously decided, "[t]he only way the doctrine of pre-emption by the state can co-exist with self-government powers of a municipality is if there is an express prohibition by statute which forbids local governments with self-government powers from acting in a certain area. The doctrine of implied pre-emption, by definition, cannot apply to local governments with self-government powers." *D & F Sanitation Serv. v. City of Billings* (1986), 219 Mont. 437, 445, 713 P.2d 977, 982. All prohibitions must be explicit. *D & F Sanitation Serv.*, 219 Mont. at 445, 713 P.2d at 982.

¶11    In the case *sub judice*, the Legislature has exempted VGM establishments from local ordinances that are more restrictive than the MCIAA.

> **Section 1. Premises with video gambling machines–local smoking ordinance no more restrictive than state law.** An establishment that has been granted a permit under Title 23, chapter 5, part 6, for the placement of video gambling machines on the premises is *exempt* from any local government ordinance that is more restrictive than the provisions of Title 50, chapter 40, part 1.

Section 7-1-120, MCA (emphasis added).

¶12    The question we must address is whether this exemption constitutes an *express prohibition* that forbids local governments with self-government powers from acting in a certain area. *D & F Sanitation Serv.*, 219 Mont. at 445, 713 P.2d at 982. *See Gregory v. Ashcroft* (1991), 501 U.S. 452, 111 S.Ct. 2395, 115 L.Ed.2d 410 (discussing the need for unmistakable clarity when Congress intends to preempt powers of the states).

> "[I]f Congress intends to alter the 'usual constitutional balance between the States and the Federal Government,' it must make its intention to do so 'unmistakably clear in the language of the statute.' *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 242 (1985); see also *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 99 (1984). *Atascadero* was an Eleventh

6

Amendment case, but a similar approach is applied in other contests. Congress should make its intention 'clear and manifest' if it intends to pre-empt the historic powers of the States. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). . . . 'In traditionally sensitive areas, such as legislation affecting the federal balance, the requirement of clear statement assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision.' *United States v. Bass*, 404 U.S. 336, 349 (1971)." *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 65 (1989).

*Gregory*, 501 U.S. at 460-61, 111 S.Ct. at 2401, 115 L.Ed.2d at 424 (alterations in original).

¶13　We analyze this question by determining, first, whether an exemption is the same as a prohibition and, second, whether the city ordinances regulating smoking in buildings open to the public constitute the regulation of gambling.

¶14　The Legislature can effect a prohibition under Article XI, Section 6, through express prohibitory language. *See* § 7-1-111, MCA ("A local government unit with self-government powers is prohibited from exercising the following: . . ."). Alternatively, a legislative prohibition can arise through a direct inconsistency between a state legislative act and the legislation of a self-governing unit. For example, the City of Billings could not supersede the state statutory requirement that charges against a suspended firefighter must be presented to the city council for a hearing. *Billings Firefighters Local 521 v. City of Billings*, 1999 MT 6, ¶¶ 10-25, 293 Mont. 41, ¶¶ 10-25, 973 P.2d 222, ¶¶ 10-25.

¶15　On the question whether § 7-1-120, MCA, contains express prohibitory language, the State argues that, although the legislature did not use the word "prohibited," the exemption created by the statute is tantamount to a prohibition. We disagree. To exempt is not to prohibit. A prohibition cuts off the power to act in the first instance. *See Ortiz v. Pennsylvania* (Pa. 1996), 681 A.2d 152, wherein the home-rule municipalities of

7

Philadelphia and Pittsburgh adopted ordinances banning assault weapons. The Pennsylvania Supreme Court declared the ordinances banning assault weapons were invalidated by a subsequent state law specifically denying municipalities any power to "in any manner regulate" the lawful ownership of firearms. *Ortiz*, 681 A.2d at 155. In contrast to such an express "prohibition," an "exemption" assumes that there is authority or power to act and grants *freedom* or *immunity* from that power. The American Heritage Dictionary 1046 (William Morris, ed., 1969) (defining prohibit as "1. To forbid by authority. 2. To prevent or debar."); The American Heritage Dictionary 622 (4th ed., 2000) (defining the adjective exempt as "1. Freed from an obligation, a duty, or a liability to which others are subject; excused: *persons exempt from jury duty; income exempt from taxation; a beauty somehow exempt from the aging process*."). In other words, an exemption is an *exception to*, not a *denial of* the power to act. *See Town Pump, Inc. v. Bd. of Adjustment of Red Lodge*, 1998 MT 294, ¶ 41, 292 Mont. 6, ¶ 41, 971 P.2d 349, ¶ 41 ("We conclude that Montana has not specifically *denied Red Lodge's power to regulate* the sale of alcohol." (emphasis added)).

¶16 The Legislature has very clearly delineated fourteen powers that self-governing municipalities are "prohibited" from exercising. Section 7-1-111, MCA. It has also set forth five specific powers that local governments with self-government powers are "prohibited" from exercising "unless the power is specifically delegated by law . . . ." Section 7-1-112, MCA. Together, these two statutes constitute prohibition through express statutory language. The power to regulate indoor smoke, however, is not listed in either of these prohibitory

8

statutes. *See* §§ 7-1-111 to 112, MCA. We hold that, in passing § 7-1-120, MCA, the Legislature did not effect an express prohibition of self-governing powers.

¶17 The State contends that it has pre-empted the area of state licensed VGMs and that the city ordinances are inconsistent with that pre-emption. The Legislature has provided through express statutory language that local governments with self-government powers are "prohibited" "the power to regulate any form of gambling, lotteries, or gift enterprises." Section 7-1-112(5), MCA. The question is, have the cities, in passing clean air ordinances, attempted to regulate a "form of gambling" in contravention of the express prohibition? The answer is no. The cities did not regulate gambling or video gaming in any sense of the word. They regulated clean indoor air. If the regulation of clean indoor air incidentally impacts VGM establishments, that does not mean that they have been regulated *qua* VGM establishments. Rather, they have been regulated as buildings open to the public. The city ordinances have incidental impacts on *all* buildings open to the public. This includes buildings housing state regulated and licensed enterprises, for example drug stores, chiropractic offices, and law offices. In prohibiting indoor smoking, the cities have not infringed upon the state regulation of pharmacists and chiropractors or upon this Court's regulation of attorneys. Were a city ordinance to require that owners of buildings (including VGM establishments) keep their sidewalks clear of snow, we would not conclude that the cities have regulated gambling.

¶18 In conclusion, we hold that the challenged statute, § 7-1-120, MCA, does not set forth a prohibition of self-governing powers under Article XI, Section 6, of the Montana

Constitution. Accordingly, it does not preempt any no-smoking ordinances adopted by any self-governing entity. Since § 7-1-120, MCA, has no force and effect, we need not address the other constitutional challenges under Montana Constitution Article V, Section 11(3) and Article II, Sections 1 and 2.

¶19    In concluding that the Helena ordinance is more restrictive than the MCIAA, Justice Warner's dissent depicts the MCIAA as protecting the "right" or privilege of proprietors to designate areas as smoking. This analysis ignores the fact that the MCIAA was enacted to advance the Legislature's "constitutional obligations under Article II, section 3 . . ." (right to a clean and healthy environment) and "Article XI of the Montana Constitution . . . ." Section 50-40-102, MCA. Contrary to the dissent's characterization, the MCIAA does not confer any rights or privileges on proprietors. Rather, it *requires* that proprietors place appropriate signs in designated areas. That this requirement is merely a means to an end (separating nonsmokers from smokers), rather than a right or a privilege, is illustrated by the fact that a proprietor who fails to comply is subject to criminal sanctions. Section 50-40-109, MCA. It would be ironic indeed if the MCIAA, designed to promote a clean and healthy environment, was interpreted as a declaration of rights for proprietors of VGM establishments.

Attorney Fees

¶20    Petitioners have requested an award of attorney fees under the private attorney general doctrine enunciated in *Montanans for the Responsible Use of the Sch. Trust v. State ex rel. Bd. of Land Comm'rs*, 1999 MT 263, 296 Mont. 402, 989 P.2d 800 (*Montrust*).  In setting forth the private attorney general theory in *Montrust*, we adopted the following three factors: "(1) the strength or societal importance of the public policy vindicated by the litigation, (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff, [and] (3) the number of people standing to benefit from the decision." *Montrust*, ¶ 66 (quoting *Serrano v. Priest* (Cal. 1977), 569 P.2d 1303, 1314).

¶21    In *Montrust* we acknowledged the danger that the first prong could "'thrust [courts] into the role of making assessments of the relative strength or weakness of public policies furthered by their decisions and of determining at the same time which public policy should be encouraged by an award of fees, and which not–a role closely approaching that of the legislative function.'" ¶ 66 (quoting *Serrano*, 569 P.2d at 1314).  Accordingly, we adopted the California Supreme Court's rationale in awarding private attorney general fees only in litigation vindicating constitutional interests.  *Montrust*, ¶ 66.  Our holding in the present case amounts to a declaration that § 7-1-120, MCA, is ineffectual rather than unconstitutional; therefore, without the vindication of a constitutional interest, this case does not warrant private attorney general fees.

/S/ W. WILLIAM LEAPHART

11

We concur:

/S/ JAMES C. NELSON

/S/ JIM REGNIER

Justice W. William Leaphart specially concurring.

¶22    In the Court's opinion we conclude that § 7-1-120, MCA, does not expressly "prohibit" the cities from exercising self-governing powers. I write this special concurrence to point out that, in addition, § 7-1-120, MCA, does not, by its terms, have any effect on the anti-smoking ordinances in question. In briefing this matter, the parties and various amici have all assumed that the ordinances in question are "more restrictive" than the provisions of the Montana Clean Indoor Air Act, §§ 50-40-101 to 109, MCA (MCIAA), in that the ordinances deny access to smokers who would otherwise be guaranteed access to "some public places," including VGM establishments. Denial of this supposedly guaranteed smoker access to VGM establishments resulted in a loss of revenue from VGMs. To protect that source of revenue, the Legislature passed § 7-1-120, MCA. Upon close examination,

it is apparent that the Legislature's assumption that the MCIAA guarantees access to smokers is entirely unfounded.

¶23    Section 7-1-120, MCA, exempts VGM establishments from any city ordinances that are "more restrictive" than the provisions of the MCIAA.  In order to analyze whether the Helena nonsmoking ordinance is "more restrictive" than the MCIAA, the ordinances must be interpreted in the context of the purposes and provisions of the MCIAA.  As the State clearly explains in its brief on appeal, when Helena adopted the ordinance in question, VGM licensees reported immediate and significant decreases in revenues.  Operators reported that their customers use tobacco products at a higher rate than the general population, and, when Helena applied its ordinance, their smoking patrons went elsewhere.

¶24    VGMs are heavily regulated and taxed by the State. Title 23 part 5, Montana Code Annotated.  The tax revenue is calculated as a share of the net profits of the machines and distributed primarily to local governments.  Under § 15-1-121(9), MCA, local governments' base year entitlement includes tax revenues from VGMs so that, to the extent the VGM contribution is reduced by actions of local governments, the State's funding obligation increases.  In response, the 2003 Legislature adopted HB 758 to exempt VGM establishments from local ordinances "more restrictive" than the MCIAA, which purports to "provide for reserved areas in some public places for those who choose to smoke."  Section 50-40-102, MCA.  The question becomes  thus:  Is the Helena ordinance "more restrictive" than the MCIAA as far as guaranteeing the designation of smoking areas in some public places and thereby ensuring greater tax revenue to the State?

13

¶25    What are the "restrictions" of the MCIAA?

¶26    The intent and purpose of the MCIAA is set forth in § 50-40-102, MCA, as follows:

> The legislature, mindful of its constitutional obligations under Article II, section 3, and Article IX of the Montana constitution, has enacted the Montana Clean Indoor Air Act of 1979. It is the legislature's intent that the requirements of this part provide adequate remedies for the protection of the environmental life support system. The purpose of this part is to protect the health of nonsmokers in public places and to provide for reserved areas in some public places for those who choose to smoke.

¶27    The purpose of the Act is clear from the face of the statute. That is, the legislature sought to protect the health of nonsmokers in public places and "to provide for reserved areas in some public places for those who choose to smoke." Clearly, the purpose was not only to protect the health of nonsmokers, but also to enact certain *restrictions* establishing a minimum floor whereby smokers would be guaranteed the designation of smoking areas in "some public places."

¶28    Significantly, the MCIAA is completely "non-restrictive" as to bars and taverns *where meals are not served* since such establishments are exempt from the MCIAA. Section 50-40-107(2), MCA. Since the MCIAA does not apply to such establishments, it does not "restrict" their activities. If the MCIAA does not restrict their activities, logic dictates that the Helena ordinance cannot, as to them, be "more restrictive" than the MCIAA. Thus, bars and taverns where food is not served do not benefit from the exemption set forth in § 7-1-120, MCA. As to establishments, including bars and taverns where meals *are* served, the specific requirements of the MCIAA are contained in § 50-40-104, MCA, which provides as follows:

14

(1) The proprietor or manager of an enclosed public place shall:

(a) designate nonsmoking areas with easily readable signs;

(b) reserve a part of the public place for nonsmokers and post easily readable signs designating a smoking area;

(c) designate the entire area as a smoking area by posting a sign that is clearly visible to the public stating this designation; or

(d) designate and reserve the entire area as a nonsmoking area.

¶29 In terms of reserving or designating an area as smoking or nonsmoking, the four subparts of § 50-40-104(1), MCA, are stated in the disjunctive "or." That is, the proprietor or manager must designate either the whole establishment as smoking or nonsmoking, or reserve some areas for each group by posting appropriate signs. Significantly, however, the MCIAA does not require a proprietor to reserve or to designate any or all of the establishment as a smoking area. Thus, despite the stated purpose of "providing for reserved areas in some public places for those who choose to smoke," the restrictions imposed by the MCIAA leave the existence of such smoking areas entirely up to the discretion of the individual proprietor. For example, pursuant to § 50-40-104(1)(d), MCA, all the managers or proprietors in the City of Helena could choose to designate their respective establishments as "nonsmoking." In other words, the MCIAA does not require that any of the managers or proprietors in question reserve any areas for smoking. Likewise, the managers and proprietors could all choose to designate their establishments as smoking areas, § 50-40-104(1)(c), MCA, thereby defeating the stated purpose of protecting the health of nonsmokers in public places.

¶30 Section 7-1-120, MCA, seeks to protect smoker access and state revenue by exempting VGM establishments from any local ordinances that are "more restrictive" than

the provisions of the MCIAA.  It assumes, as the MCIAA so states in its purpose clause, that the MCIAA requires that "smoking areas" be reserved in some public places for those who choose to smoke. However, the substantive provisions of the MCIAA are permissive rather than mandatory and do not actually require that  managers or proprietors reserve any areas for smokers.  Since the MCIAA does not restrict managers or proprietors to guaranteeing smoking areas, the Helena ordinance is not "more restrictive."  An ordinance cannot be deemed more restrictive than legislation which is not restrictive.

¶31　"Every reasonable doubt as to the existence of a local government power or authority shall be resolved in favor of the existence of that power or authority."  Section 7-1-106, MCA.  Accordingly, although § 7-1-120, MCA, exempts VGM establishments from ordinances that are "more restrictive" than the MCIAA, that exemption has no application to the ordinances in question.  Since § 7-1-120, MCA, does not interfere with the enforcement of the ordinances adopted by the self-governing units, it does not implicate Article XI, Section 6, or Article II, Sections 1 or 2, of the Montana Constitution.

/S/ W. WILLIAM LEAPHART

16

Justice Patricia O. Cotter concurs.

¶32    I concur in the Court's Opinion.  I write separately to offer the following.

¶33    As the Court points out at ¶ 10 of its Opinion, *DNF Sanitation* stands for the proposition that the State may preempt action of local governments with self-government powers only "if there is an express prohibition by statute which forbids local governments with self-government powers from acting in a certain area." *DNF Sanitation*, 219 Mont. at 445, 713 P.2d at 982.  Clearly, HB 758 by its terms does not expressly prohibit cities with self-governing powers from regulating smoking in public establishments.  To the contrary, we can conclude from the specificity of HB 758 that the Legislature had no intention of prohibiting these cities from regulating smoking in most public buildings.  The sole concern of the Legislature was with buildings containing video gaming machines.  Thus, if anything, HB 758 reflects the Legislature's tacit agreement that self-governing cities *may exercise* the power to regulate smoking in *most* local facilities.

¶34    Nothing in the Constitution or the laws of this state gives the Legislature the authority to at once allow the exercise of a power by a self-governing city,  while declaring that certain entities or establishments shall be exempt from the operation of that otherwise valid--that is, unprohibited--exercise of self-government power.  If anything, in granting a special privilege to the video gaming industry by exempting it from the operation of a local smoking ordinance which by its terms is applicable to all local public buildings, the Legislature has arguably violated Article II, Section 31 of the Montana Constitution which prohibits any law which makes an irrevocable grant of special privileges, franchises, or immunities.  For this

17

reason, in addition to those set forth in the Court's Opinion, I concur in the result reached by the Court.

/S/ PATRICIA O. COTTER

Justice James C. Nelson joins in the concurrence of Justice Patricia O. Cotter.

/S/ JAMES C. NELSON

Chief Justice Gray concurring in part and dissenting in part.

¶35 I concur in the Court's determination that Section 1 of HB 758, codified at § 7-1-120, MCA, does not create a prohibition on the power of self-governing local governments to enact local ordinances regulating smoking in buildings open to the public. As the Court explains, applying the plain meaning of "exemption" and "prohibition" clarifies that an exemption is not equivalent to a prohibition. Consequently, I agree that Section 1 of HB 758 does not create an express statutory prohibition on the powers granted to local governments with self-government charters under Article XI, Section 6 of the Montana Constitution, as required by our case law interpreting that constitutional provision. In other words, the "exemption" language contained in § 7-1-120, MCA, simply has no effect for Article XI, Section 6 purposes as that issue is presented by the Petitioners.

¶36 I also agree with the Court's conclusion that it is unnecessary to address the Petitioners' remaining arguments regarding the constitutional validity of HB 758. Finally, I agree that Petitioners are not entitled to attorneys' fees pursuant to the private attorney general doctrine.

¶37 I dissent, however, from the Court's decision to address whether the ordinances enacted by these self-governing local governments are valid vis-a-vis the express prohibition on the exercise of the power to regulate a form of gambling contained in § 7-1-112(5), MCA, and its conclusion that they are. The Court's determination that Section 1 of HB 758 does not constitute an express prohibition on the powers of self-governing local governments is dispositive of the issues regarding the constitutional validity of the legislative enactment--HB

19

758--over which we accepted jurisdiction. As a result, the Court's discussion of whether the local ordinances regulate a form of gambling in violation of § 7-1-112(5), MCA, is *obiter dictum* in its entirety.

¶38 Furthermore, I observe that the issues over which this Court accepted original jurisdiction are limited--with the exception of the attorneys' fees issue--to issues relating to whether the Legislature's passage of HB 758 is constitutional. None of the issues accepted by the Court involves the validity of the local ordinances themselves. We are all aware that several legal actions pending in at least one district court directly challenge the validity of the local indoor smoking ordinances on various grounds. It is entirely possible that the issue of whether the local ordinances violate § 7-1-112(5), MCA, has been raised in at least one of these district court actions. In my opinion, the Court's discussion, in dicta, of whether the local ordinances constitute the regulation of a form of gambling could potentially foreclose the ability of the parties in those actions to raise and thoroughly present the merits of this issue which is beyond the scope of this proceeding. The fact that the State raises an issue qualitatively different from the issues we accepted does not require that we respond to it. I believe the more correct route is to leave this discussion until such time, if any, as parties in a trial court proceeding have raised this issue, have presented a district court with evidence and legal arguments, a district court has resolved it and the issue is properly appealed to this Court.

¶39 For these reasons, I concur in the Court's opinion on the issues properly before us. I dissent from the Court's discussion and conclusion on the validity of the local ordinances.

/S/ KARLA M. GRAY

20

Justice John Warner dissents.

¶40 I think I can understand what the result of the Court's decision is, including the special concurrences. That is: Helena casino operators cannot allow smoking in their gaming rooms, in spite of § 7-1-120, MCA. Thus, the Petitioners are successful in this part of the litigation. However, I must confess I am not sure why.

¶41 First, the Court's Opinion. This case does not present a smoking versus non-smoking question. It is a case of a city versus the Legislature. It is the law that in a power struggle between the Legislature and a self-governing municipality, the Legislature wins. Mont. Const., Art. XI, § 6. It seems the Court agrees the Legislature has the power to prohibit Helena from banning smoking in casinos–it just did it wrong. It had to "prohibit," not "exempt."

¶42 I agree with the Court's Opinion to the point where *Billings Firefighters Local 521* is cited for the correct proposition that a legislative prohibition can arise through a direct inconsistency between a state legislative act and the legislative act of a self-governing unit. Beyond that point, while I stand in awe of the Court's ability to weave words toward a result, I must disagree.

¶43 Helena's ordinance prohibits smoking in casinos in the city– no exceptions. House Bill 758, codified as § 7-1-120, MCA, states that casinos are exempt from all city ordinances that are more strict than the Clean Indoor Air Act, Title 50, chapter 40, part 1. The Clean Indoor Air Act allows a proprietor to designate his casino as a place where smoking is allowed. Section 50-40-104(1)(c), MCA. Ergo: even though Helena's ordinance states there

21

will be no smoking within the city's casinos, the Legislature says a proprietor may allow smoking in his Helena casino. To me, this is a direct inconsistency between a state legislative act and the legislative act of a self-governing unit. The Legislature trumps Helena–that's the law.

¶44 I think what Justice Leaphart's special concurrence says is: since the MCIAA does not prohibit smoking in casinos, but only requires designation of smoking and non-smoking areas, § 7-1-120, MCA, is not more restrictive than the MCIAA. This is so because § 7-1-120, MCA, does not state that smoking is allowed but only states that an ordinance cannot be more restrictive than the MCIAA. Thus, the reasoning goes, even though § 7-1-120, MCA, may be valid; it is meaningless.

¶45 Again, I am forced to disagree. The proprietor of a casino is clearly allowed to designate a portion, or all, of his establishment as "Smoking Allowed," at his option. Section 50-40-104(1)(c), MCA. Helena's ordinance states that the proprietor does not have such option; his premises is "No Smoking" by law. I offer the following to illustrate the obvious:



¶46     The casino depicted in Figure 1 is more restricted than the one in Figure 2.  Ergo: Helena's ordinance, which states "No Smoking" is more restrictive than the MCIAA, which states "Smoking Optional."  Section 7-1-120, MCA, is not meaningless.  It has the very real effect of exempting the proprietor of a casino from the restriction of Helena's ordinance.  Under the statute, a proprietor can exercise his right to post a sign that says smoking is allowed, and smoking is then allowed.

¶47     Justice Cotter's special concurrence would conclude that § 7-1-120, MCA, is special legislation in violation of Article XI, Section 31, of the Montana Constitution, because it grants a special privilege, franchise, or immunity to tavern owners with gaming machines, and denies such to other businesses without gambling.  To reach this conclusion, the concurrence states, without citation of authority, that nothing in the Constitution or the statutes gives the Legislature the power to allow self-governing cities to ban smoking in establishments without gaming licenses, and to deny this authority to such cities in regard to establishments with gaming licenses.  I must disagree yet again.

¶48     Article III, Section 9, of the Montana Constitution gives the Legislature the authority to allow gambling by law; it has done so.  The regulation of gambling is a matter of state-wide concern.  *DeLong v. Downes* (1977), 175 Mont. 152, 156, 573 P.2d 160, 162.  There is no disagreement in this case that the State of Montana has the authority to regulate gambling and that it has done so.  Title 23, Chapter 5, MCA.  The statute in question here applies only to gaming premises, and is a part of the regulation of those premises.  I would conclude that the power to regulate gambling includes the power to regulate the premises

23

wherein it is conducted. The decision whether to allow smoking where gambling is allowed is within the power of the State.

¶49    The evidence that smoking, and second-hand smoke, is detrimental to health appears to be overwhelming. However, we do not have before us the question of whether smoking is or is not bad for health; the answer to which question seems obvious. Still, the citizens of Montana have the right to be foolish, and some choose to exercise that privilege. What we do have before us is whether the Legislature's power to regulate gambling can be usurped by Helena. It cannot. Whether the Legislature has unwisely exercised its power in this area is a matter of policy for it alone to decide; and the citizens of Helena, this Court, and the rest of Montana's citizens, must live with its decision or get it to change the law. Of course, none of us are required to patronize establishments that allow smoking.

¶50    I dissent.

/S/ JOHN WARNER


Justice Jim Rice joins in the foregoing dissent.


/S/ JIM RICE